UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
SEVEN CORNERS SHOPPING CENTER FALLS CHURCH,
VA. LIMITED PARTNERSHIP,

                              Plaintiff,          07-CV-6332

              v.
                                                  **DECISION and**
                                                  **ORDER**
CHESAPEAKE ENTERPRISES USA LLC d/b/a
QUIZNOS, RNS, INC., CHINTA MANI LAMICHHANE,
LALITA LAMICHHANE, KALPANA ARYAL, GAJENDRA
ARYAL, SANJAYA THAPA, BADRI LAMICHHANE,
RANJANA PANDEY, KEDAR NATH PANDEY and
NAAMAN SHABAN,

                              Defendants.
_____

## INTRODUCTION

Plaintiff Seven Corners Shopping Center Falls Church, Va. Limited Partnership ("plaintiff"), brings this action for breach of contract against Chesapeake Enterprises USA LLC d/b/a Quiznos ("Quiznos"), Chinta Mani Lamichhane, Lalita Lamichhane, Kalpana Aryal, Gajendra Aryal, Sanjaya Thapa, Badri Lamichhane, Ranjana Pandey and Kedar Nath Pandey (collectively "defendants"), RNS, Inc. ("RNS") and Naaman Shaban ("Shaban") (collectively "defaulting defendants").[1] Plaintiff moves to renew its motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff previously filed a motion for summary judgment, which the Court denied without prejudice under Rule 56(f) to allow the defendants the opportunity to conduct discovery. See Seven Corners Shopping Ctr. Falls Church, VA. Ltd. Partnership v. Chesapeake Enter. USA

---

[1]Defendants have served their Answer to plaintiff's complaint and have filed a cross-claim against defaulting defendants. However, defaulting defendants have not appeared in this action and on February 12, 2008, default judgments were entered against both parties.

LLC, et al., 2008 WL 1766617 (W.D.N.Y.2008) ("April 2008 Order").[2] In addition, plaintiff argues that despite the opportunity granted by the April 2008 Order, defendants failed to conduct any discovery and the period of time to conduct such discovery has expired. Further, plaintiff argues that the Lease obligates defendants to pay plaintiff's legal fees. Accordingly, plaintiff's request that leave be granted for plaintiff's to submit an application for legal fees at the conclusion of this motion for summary judgment.

Defendants have opposed plaintiff's renewed motion for summary judgment and have filed a motion for partial summary judgment. They do not dispute that plaintiff is entitled to certain sums but argue that there is a genuine dispute as to the actual amount that plaintiff is entitled.[3] Defendants contend that the narrow issue presented here, which requires a dismissal of most of plaintiff's claims is whether a commercial landlord, can be entitled to collect rents and fees from a prior tenant, after the landlord has opted to re-rent the property for its own benefit. See Defs. Br. at 1. For the reasons set forth in more detail below, I grant in part and deny in part plaintiff's motion for summary judgment and grant in part and deny in part defendants' motion for partial summary judgment.

---

[2]The April 2008 Order gave the parties the opportunity to conduct limited discovery for a period of 90 days on the issues of (1) whether rent was paid on the space leased to Quiznos at the Corners at Seven in Falls Church, Virginia (the "Premises") by the defaulting defendants from October 2006 through January 2007; and (2) whether the Premises were vacated in January 2007 by defaulting defendants.

[3]Defendants state that they have offered plaintiff $75,000 to settle this case. See Defs. Br. at 7. Plaintiff has rejected defendants' offer. See id.

**BACKGROUND**

As noted above, this is plaintiff's second motion for summary judgment. Accordingly, the Court assumes familiarity with the procedural and factual background set forth in its prior decision in this matter. See April 2008 Order. Thus, the Court will not repeat all the facts of this case and will only address the most pertinent information as it relates to this summary judgment motion. The following facts are undisputed except where characterized otherwise.

**A.   Facts**

On or about June 5, 2006, plaintiff, defendants, and defaulting defendants entered into an Assignment, Assumption and Amendment of the Lease Agreement (the "Assignment Agreement") whereby RNS agreed to accept full assignment of the Lease and assume responsibility for all liabilities and obligations of Quiznos under the Lease. According to defendants, as of June 5, 2006 they relinquished possession and ceased control of the Premises. Plaintiff claims that beginning in October 2006, defendants failed to pay the rental amount due under the Lease.[4] Defendants claim that they were not in possession of the Premises during that time. However, from speaking with Shaban, they were under the impression that while he was having some financial difficulties, he was making arrangements with plaintiff to resolve

---

[4]Plaintiff agreed to lease and did lease space to Quiznos at the Premises upon terms memorialized in the lease (the "Lease").  The term of the Lease was from December 15, 2004 through March 31, 2015.

any outstanding balances on the rent. It is undisputed that by January 2007, the defaulting defendants had vacated the Premises.[5]

Defendants claim that plaintiff did not contact them to discuss the defaulting defendants' vacating the Premises or plaintiff re-renting the Premises. Plaintiff relet the Premises to a nail salon business on or about February 2007. In this regard, defendants contend that plaintiff did not contact them, either written or otherwise, to ask for consent prior to entering into an agreement or to relet the Premises or notify them it had re-rented the Premises to the nail salon business. Plaintiff did not start collecting rent from the nail salon business until September 1, 2007. Defendants' argue that plaintiff has not provided this Court with a copy of the new lease or any details concerning the nature of the agreement with the new tenant, other than vague indications that the new tenant pays less rent. See Defs. Br. at 4. Plaintiff counters by claiming that despite having been given the opportunity to conduct discovery, defendants never did. See Reply Affidavit of Nicholas Vassello ("Vassello Reply Aff.), ¶3.[6]

**B.   Lease Provisions**

Section 7.01 of the Lease provides in pertinent part

In the event that Tenant vacates or abandons the leased premises during the term of this Lease, or fails to take

---

[5]Defendants state that defaulting defendants vacated the Premises by December 26, 2006. However, plaintiff agrees for purposes of simplicity that a few days' difference is immaterial.

[6]Plaintiff argues that the Affidavit of Chinta Mani Lamichhane ("Lamichhane Aff.") shows that defendants knew all along that defaulting defendants were struggling to pay the rent and were planning to vacate and had vacated by January 2007. See Lamichhane Aff. ¶¶12-15. Thus, defendants' prior request for discovery was nothing more than a delay tactic. See Vassella Reply Aff. ¶3-4.

possession and operate its business as stated in this SECTION, the whole sum to be paid as rental and additional rental throughout the entire term of this Lease including the fixed minimum rental herein provided for, shall immediately become due and payable unless prohibited by law. Owner, at its option, may re-enter the leased premises and relet the same and it is expressly agreed that Tenant shall not be entitled to credit for the rents so received until the sum due from Tenant to Owner, including damages, expenses, attorney's fees, cost of alterations and repairs as herein provided shall have been fully paid, and nothing in this paragraph shall be deemed to have waived any other right or remedy of Owner.

According to plaintiff, pursuant to the Assignment Agreement, Guaranty[7] and consistent with §7.01 of the Lease, in the event the Premises were vacated, plaintiff had the right to accelerate the rent and any additional rent due for the entire lease term. Defendants claim that while they do not dispute the authenticity of the document, they argue that the acceleration clause of §7.01 is unenforceable as a matter of law.

Section 22.01 of the Lease provides in pertinent part

In the event Owner has not received from Tenant any rental due hereunder within ten (10) days after the same shall be due, or if Tenant fails to perform any other of the terms, conditions or covenant of this Lease to be observed or performed by Tenant for more than ten (10) days after written notice of such default shall have been given to Tenant ... or if Tenant shall discontinue doing its business in the leased premises as defined in SECTION 7.01 of this Lease, or if Tenant shall abandon the leased premises ... Owner besides other rights or remedies it may have, shall have the immediate right of re-entry ... all without service of notice or resort of legal process[.]

Section 22.02 of the Lease provides in pertinent part

---

[7]Pursuant to a Lease Guaranty signed on May 13, 2004 (the "Guaranty"), the full and faithful performance and observation of all the covenants, terms and conditions of the Lease was guaranteed by the defendants.

> Should Owner elect to re-enter as herein provided, or
> should it take possession pursuant to any legal
> proceedings ... it may either terminate this Lease or it
> may from time to time without terminating this Lease,
> make such alterations and such repairs as may be
> necessary in order to relet the leased premises ...upon
> such terms and conditions as Owner at its sole discretion
> may deem advisable[.] If such rentals received from such
> reletting during any month be less than that to be paid
> during that month by Tenant hereunder, Tenant shall pay
> any such deficiency to Owner. Such deficiency shall be
> calculated and paid monthly. No such re-entry or taking
> possession of the leased premises by Owner shall be
> construed as an election on its part to terminate this
> Lease unless a written notice of such intention be given
> to Tenant or unless the termination thereof be decreed by
> a court of competent jurisdiction.

Plaintiff argues that §22.02 is a "survival of rent clause" commonly used in commercial leases. <u>See</u> Pl. Reply Br. at 3. In addition, plaintiff contends that §22.02 does not require plaintiff to notify defendants of its intent to re-enter and relet the Premises. <u>See</u> <u>id.</u> Instead, §22.02 begins with the word "Should Owner elect to re-enter, as herein provided[.]" <u>See</u> <u>id.</u> According to plaintiff the "herein provided" can be found in §§7.01 and 22.01 of the Lease, which provide that plaintiff could re-enter if the rent was more than 10 days past due or if the premises were abandoned "all without service of notice or resort to legal process." <u>See</u> <u>id.</u> at 2.[8]

---

[8]In essence, plaintiff contends that §7.01 of the Lease provides that the early vacatur or abandonment of the Premises allowed plaintiff to re-enter the Premises and relet it. <u>See</u> Vassello Aff. ¶12. In addition, §22.01 allowed plaintiff to re-enter the Premises without notice or resort to legal process and §22.02 then permitted plaintiff to relet the Premises on such terms as it deemed advisable, in its sole discretion. <u>See</u> <u>id.</u> Further, §22.01 provides that the defendants would be liable for any shortfall between the rent collected from the new tenant and what the defendants were supposed to pay. <u>See</u> <u>id.</u>

**DISCUSSION**

I.    **Summary Judgment Standard**

A party is entitled to summary judgment if it can demonstrate "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Once the movant has " 'show[n]' " or "point[ed] out ... that there is an absence of evidence to support the nonmovant['s] case," the burden shifts to the nonmovant. See Celotex Corp. v. Catrett, 477 U.S. 317, 325-27 (1986). To discharge his burden, "a plaintiff must come forward with evidence to allow a reasonable jury to find in his favor" on each of the elements of his prima facie case. See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir.2001).

The court must draw all factual inferences in favor of the party against whom summary judgment is sought and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmovant. See Anderson, 477 U.S. at 255; Celotex Corp., 477 U.S. at 322. However, a nonmovant benefits from such factual inferences "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007). The law is well established that "conclusory statements, conjecture, or speculation" are

insufficient to defeat a motion for summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.1996). The nonmovant cannot survive summary judgment simply by proffering "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), or presenting evidence that "is merely colorable, or is not significantly probative." See Savino v. City of New York, 331 F.3d 63, 71 (2d Cir.2003) (quoting Anderson, 477 U.S. at 249-50, (citation omitted)). Rather, he must "set out specific facts showing a genuine issue for trial." See Fed.R.Civ.P. 56(e)(2); see also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of...events is not wholly fanciful.")

## II.  Plaintiff's Election of Remedy Does Not Bar Its Claims

It is well established that "once the lease is executed, the lessee's obligation to pay rent is fixed...and the landlord is under no obligation or duty to the tenant to relet or attempt to relet abandoned premises in order to minimize damages." See Holy Props. Ltd v. Kenneth Cole Prods., Inc., 87 N.Y.2d 130, 133 (1995). The Court of Appeals explained that when a lease is terminated prior to its expiration a landlord has three options: (I) it can do nothing and collect the full rent due under the lease, (ii) it can accept the tenant's surrender, reenter the premises and relet them for its own account, thereby releasing the tenant from further liability, or (iii) it could notify the tenant that it was entering

and reletting the premises for the tenant's benefit. See id. at 133-134.

Defendants, relying on Holy Props. argue that plaintiff is not entitled to future rents beyond January 2007 because plaintiff re-rented the Premises to another tenant and this reletting terminates the prior lease. See Defs. Br. at 8-9. Defendants contend that plaintiff accepted RNS' surrender as an abandonment by operation of law when it re-entered the Premises and relet the Premises to a new tenant without notifying them. See id. at 9; see also 4400 Equities, Inc. v. Dhinsa, 52 A.D.3d 654 (2d Dept.2008) ("there was a surrender by operation of law, of the lease between the parties, which was accepted by the [landlord]. However, we disagree with the proposition that the [tenant] is liable for any purported damages the [landlord] alleges accrued from and after that date."); Centurian Dev. Ltd. v. Kenford, 60 A.D.2d 96 (4th Dept. 1977). Accordingly, defendants assert that the Lease was terminated as of February 1, 2007. Plaintiff does not disagree that Holy Props. is good law. See Pls. Reply Br. at 1. However, plaintiff argues that defendants' reliance on Holy Props. is misplaced and inapplicable here. Plaintiff contends that Holy Props. also holds that "[a]lthough an eviction terminates the landlord-tenant relationship, the parties to a lease are not foreclosed from contracting as they please...If the lease provides that the tenant shall be liable for rent after eviction, the provision is enforceable." See id. at 1-2.

The first issue to be determined is whether a surrender by operation of law of the Premises occurred, thereby terminating the Lease. See Riverside Research Inst. v. KMGA, Inc., 68 N.Y.2d 689, 692 (1986); Matter of Wasserman v. Ewing, 270 A.D.2d 427, 428 (2d Dept.2000); see also Deer Hills Hardware v. Conlin Realty Corp., 292 A.D.2d 565 (2d Dept.2002). "Whether a surrender by operation of law has occurred is a determination to be made on the facts." See Riverside Research, 68 N.Y.2d at 692. In reviewing the applicable law and the facts of this case, the Court concludes that plaintiff did surrender the Premises by operation of law. Here, plaintiff opted to re-rent the Premises for its own benefit. Accordingly, there was an acceptance of the abandonment of the Premises by RNS by operation of law when plaintiff relet the Premises to the nail salon business, which terminated the landlord-tenant relationship. Defendants' motion for partial summary judgment on this issue is granted.

However, defendants' assertion that its obligation to pay rent terminated when plaintiff relet the Premises to a new tenant in February 2007 is without merit as the Lease provided that the landlord was permitted to re-enter the Premises upon the tenant's abandonment and that the tenant's liability would survive such re-entry. See Holy Props., 87 N.Y.2d at 964; The Gallery at Fulton St., LLC v. Wendrew LLC, 30 A.D.3d 221, 222 (1st Dept.2006) (although the termination ends the landlord-tenant relationship, the parties clearly contracted to make the defaulting tenant liable for rent after such termination); Lexington Ave. & 42nd St. Corp.

v. Pepper, 221 A.D.2d 273, 274 (1st Dept.1995); Olim Realty Corp.
v. Big John's Moving, Inc., et al., 250 A.D.2d 744 (1998). The
termination of the landlord-tenant relationship does not signify
that plaintiff may not make further claims against defendants for
rent shortfall after February 2007.

The Lease contains a "survival of liability clause" found in
§22.02, which provides in pertinent part

> Should Owner elect to re-enter *as herein provided*, or
> should it take possession pursuant to any legal
> proceedings ... *it may either terminate this Lease or it
> may from time to time without terminating this Lease*,
> make such alterations and such repairs as may be
> necessary *in order to relet the leased premises* ...upon
> such terms and conditions as Owner at its sole discretion
> may deem advisable[.] If such rentals received from such
> reletting during any month be less than that to be paid
> during that month by Tenant hereunder, Tenant shall pay
> any such deficiency to Owner.

Pursuant to §22.02,[9] defendant's liability can, by agreement,
survive the termination of the lease. Accordingly, defendants
contracted that whether or not the Lease was terminated, they would
remain liable for any deficiency between the rent provided in the
Lease and any rent plaintiff collected under a new lease. See Int'l
Publications v. Matchabelli, 260 N.Y. 451, 454 (1933) ("What
survived was a liability, not for rent, but for damages...[T]he
clear intention thus expressed by the parties was this: Even if the
tenant shall be evicted; even if for his...rental he will receive

---

[9]Notably, defendants claim that this section is inapplicable because plaintiff did not recover possession
"pursuant to legal proceeding or pursuant to any notice provided by law." See Defs. Br. at 10. However, in quoting
§22.02, defendants overlook the beginning of the section, which provides "[should Owner elect to re-enter, *as herein
provided*, or should it take possession pursuant to any legal proceedings or pursuant to any notice provided by law..."
§§ 7.01 and 22.01 provide that re-entry was permitted without legal process or resort to notice.

no...use; even if the relationship of landlord and tenant shall have terminated; these facts, nevertheless 'shall not be deemed to have absolved or discharged the tenant from any liability hereunder'"); Hines v. Bisgeier, 244 A.D. 354 (1st Dept.1935) ("Whether the moneys to be paid should termed 'rent' or not is immaterial"). In this case the Lease between the parties provided that the defendants would remain liable for the rent upon the cancellation or termination of the Lease. Thus, the parties agreed at the onset of the tenancy that the defendants would remain liable for rent due under the Lease for its duration. Defendants' motion for partial summary judgment on this issue is denied.

### III. **Enforceability of the Rent Acceleration Clause**

The next issue for determination is whether the provision found in §7.01 of the Lease is enforceable. Defendants contend that once the lease has been terminated, a landlord may no longer exercise the acceleration clause in the terminated lease and collect against future unearned rent. See Defs. Br. at 12; see also Benderson v. Poss, 142 A.D.2d 937, 938 (4th Dept.1988) (affirming denial of acceleration clause for rents on basis that landlord terminated lease prior to trying to invoke that clause). However, the courts in New York appear to be divided on this issue. See Olim Realty Corp., 250 A.D.2d at 744, (Court held that a landlord and tenant may contract for accelerated rents due upon termination of the landlord-tenant relationship); see also Marketplace v. David Smith, DBA The Hippo Café, et al., 181 Misc.2d 440, 441 (Henrietta Town Court, Monroe Co., 1999).

The landlord in <u>Holy Props.</u> pursued an action for accelerated rents in the Supreme Court after obtaining a judgment of eviction in a separate summary proceeding. As noted above, the Court of Appeals concluded that "[a]lthough an eviction terminates the landlord-tenant relationship, the parties to a lease are not foreclosed from contracting as they please." <u>See</u> <u>Holy Props.</u>, 87 N.Y.2d at 133-134. In this regard, the court differentiated between leases and contracts and held that a party may be liable for accelerated rent only if it agreed to such an obligation in writing. <u>See</u> <u>id.</u> Here, §7.01 states in pertinent part that "[i]n the event that Tenant vacates or abandons the leased premises during the term of this Lease, or fails to take possession and operate its business..., the whole sum to be paid as rental and additional rental throughout the entire term of this Lease including the fixed minimum rental herein provided for, shall immediately become due and payable[.]" Accordingly, following the reasoning in <u>Holy Props.</u>, the parties contracted for this provision in writing and defendants may be held liable for the accelerated rent since it agreed to such an obligation in writing.

However, the termination of the lease ends the landlord-tenant relationship leaving the tenant not with a liability for rent, but with a liability for damages. <u>See</u> <u>Benderson</u>, 142 A.D.2d 937.[10] Accordingly, even assuming defendants are correct and §7.01 may not

---

[10]Whether or not a lease classifies an accelerated rent provision as "rent", the fact remains that no action may be brought for future rent in the absence of an acceleration clause. <u>See</u> <u>Beaumont Offset Corp. v. Zito</u>, 256 A.D.2d 372 (2d Dept.1998); <u>Utility Garage Corp. v. Nat'l Biscuit Co., et al.</u>, 71 A.D.2d 578 (1st Dept.1979).

be considered an acceleration clause under the <u>Benderson</u> rationale, the Court finds that it may still be considered a provision for liquidated damages. <u>See</u> <u>Int'l Publication</u>, 260 N.Y. at 454 ("What survived was a liability, not for rent, but for damages.") (citing <u>Hermitage Co. v. Levine</u>, 248 N.Y. 333 (1928)).

Under New York law, contracting parties have a right to stipulate liquidated damages for a breach of contract where the amount agreed to is "neither unconscionable nor contrary to public policy." <u>See</u> <u>Rattigan v. Commodore Int'l Ltd.</u>, 739 F.Supp. 167, 169 (S.D.N.Y.1990). An acceleration clause is one type of liquidated damages provision. Parties frequently agree to acceleration clauses, and New York courts typically enforce such provisions according to their terms. <u>See</u> <u>id.</u> (finding plaintiff employee entitled to accelerated contract benefits following his involuntary resignation); <u>Fifty States Mgmt. Corp. v. Pioneer Auto Parks. Inc.</u>, 46 N.Y.2d 573 (1979) (enforcing acceleration of remaining monthly rent due under 20-year lease where defendant willfully breached). Whether a liquidated damages provision is enforceable is a question of law. <u>See</u> <u>Leasing Serv. Corp. v. Justice</u>, 673 F.2d 70, 74 (2d Cir.1982); <u>Bigda v. Fischbach Corp.</u>, 849 F.Supp. 895, 902 (S.D.N.Y.1994); <u>JMD Holding Corp. v. Congress Fin. Corp.</u>, 4 N.Y.3d 373 (2005). The burden lies with the party opposing liquidated damages to proffer evidence that would allow a reasonable trier of fact to deny enforcement of the provision as unconscionable. <u>See</u> <u>JMD Holding Corp.</u>, 4 N.Y.3d at 380.

New York courts will generally sustain a liquidated damages clause so long as the provision is neither a penalty nor a forfeiture, and equity should intervene to invalidate a liquidated damages clause only "in rare cases." See Fifty States Mgmt. Corp., 46 N.Y.2d at 577. To recover liquidated damages in the event of a breach, the New York Court of Appeals has held that the amount must bear a reasonable relation to the probable loss, and the amount of actual loss must be incapable or difficult of precise estimation. See Truck Rent-A-Center v. Puritan Farms 2nd, Inc., 41 N.Y.2d 420, 425 (1977) ("A liquidated damage provision has its basis in the principle of just compensation for loss");[11] JMD Holding Corp., 4 N.Y.3d 373, 380 (2005) (Court of Appeals reiterated criteria for determining whether liquidated damages clause is an unenforceable penalty);[12] see also Fingerlakes Chiropractic, P.C. v. Maggio, 269 A.D.2d 790 (4th Dept.2000); Pyramid Centres & Co. v. Kinney Shoe Corp., 244 A.D.2d 625 (3d Dept.1997); City of Rochester v. E&L Piping, Inc. 196 Misc.2d 572, 575 (Rochester Sup. Ct.2003).

Defendants argue that §7.01 constitutes an unenforceable punitive provision because rather than applying a dollar-for-dollar set-off from a new tenant toward accelerated rents collected from a prior tenant, no amount of payment by a defaulting tenant would

---

[11] The well established test set forth in Truck Rent-A-Center, 41 N.Y.2d at 425 states "A contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation. If, however, the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced."(citations omitted)).

[12] Court held that the party challenging the liquidated damages provision must proffer sufficient facts to demonstrate that at the time of contracting (1) prospective actual damages "were readily ascertainable" or (2) damages agreed upon were "conspicuously disproportionate to ... foreseeable losses").

be credited against the accelerated balance until all sums are paid. See Defs. Br. at 14-15. Defendant relies on <u>Ross Realty v. V&A Iron Fabricators, Inc.</u> 5 Misc. 3d 72 (2d Dept.App.Term.2004) where the court invalidated the acceleration of rent clause in connection with a defaulting tenant. <u>See id.</u> The <u>Ross Realty</u> court reasoned that the acceleration clause was a penalty because it did not require the landlord to relet the premises after a default in rent and to apply such rent received from the reletting to the benefit of the tenant. Defendants' argument misapplies the case law and distorts the intent of the agreement.

Here, plaintiff negotiated a new lease of the Premises at a lower rent than that contracted with the defendants. <u>See</u> Vassello Aff. Ex. B. If the plaintiff is awarded the difference between what the new tenant has agreed to pay (and before the new tenant has even paid it), the result would not be "grossly disproportionate to the probable loss." <u>See</u> <u>Truck Rent-A-Center</u>, 41 N.Y.2d at 425 ("In interpreting a provision fixing damages, it is not material [what] the parties themselves have chosen to call the provision one for 'liquidated damages'...or ... a penalty. Such an approach would put too much faith in form and too little in substance) (citations omitted); <u>see also</u> <u>E&L Piping</u>, 196 Misc.2d at 575. In addition, §22.02 of the Lease when read in conjunction with §7.01 weakens the unconscionability argument of defendants since §22.02 provides that defendants are liable for any deficiency between the rent reserved in the Lease and what the new tenants actually pay. <u>See</u> §22.02 ("If

such rentals received from such reletting during any month be less than that to be paid during that month by Tenant hereunder, Tenant shall pay any such deficiency to Owner"). Moreover, ¶26 of the Complaint shows that plaintiff plans to immediately give the defendants full credit for all rent it collects from the nail salon business, even prior to the nail salon business paying such rent. Indeed, a windfall is avoided in this situation since plaintiff is seeking to accelerate only the difference between what the new tenant has agreed to pay, and before the new tenant has even paid it. Accordingly, defendants' actual exposure is being limited. Therefore, applying the above principles here, defendants' arguments and factual proffers are insufficient to defeat enforcement of the accelerated payment clause of the Lease.

Further, defendants contend that §7.01 is ambiguous and as such must be construed against the drafter. See Defs. Br. at 15-16. While the Court notes that defendants are correct that the law is well settled that "contractual ambiguities should be construed... against the drafter" Thomson v. Saatchi & Saatchi Holdings, 958 F.Supp. 808, 827 (W.D.N.Y.1997)(citations omitted), the Court must also be mindful of the nature of contract and the circumstances attendant to the parties' negotiations. See Howard Johnson Int'l v. HBS Family, Inc., 1998 WL 411334, at *6 (S.D.N.Y.1998); JMD Holding Corp., 4 N.Y.3d at 380. In addition, "[r]elevant here is whether the parties were sophisticated and represented by counsel, the contract was negotiated at arms-length between parties of equal bargaining power, and ... that [the provision] was freely

contracted to." See Bigda, 849 F.Supp. at 902 (citing Rattigan, 739 F.Supp. at 170); 186-90 Joralemon Assoc. v. Dianzon, 161 A.D.2d 329, 330 (1st Dept. 1990) (defendant's [tenant] assertions of unconscionability of the lease, pursuant to which defendant agreed to remain liable for rent due following vacatur, was correctly dismissed; court noted that transaction was "a sophisticated real estate deal," in which defendant, represented by counsel, "in the absence of allegations of high pressure techniques or unequal bargaining power," entered into the subject lease); see also Fifty States Mgmt., 46 N.Y.2d at 577 ("Absent some element of fraud, exploitive overreaching or unconscionable conduct on the part of the landlord to exploit a technical breach," court should enforce agreement of the parties).

In the instant case, defendants have not proffered any evidence from which a reasonable factfinder could determine that defendants were too unsophisticated to understand the business transaction, that the parties had unequal bargaining power, or that defendants' free will was unfairly overborne by plaintiff during negotiations. See Bigda, 849 F.Supp. at 902. Thus, plaintiff's motion for summary judgment is granted and it is entitled to liquidated damages. Defendant's motion for partial summary judgment is denied.

## IV.   **Damages**

Having found that the Lease between the parties provided that the defendants remain liable for the rent even upon termination of the Lease and that §7.01 is enforceable, the only question

remaining is the amount of damages plaintiff is entitled to pursuant to the Lease. Defendants do not dispute that RNS failed to pay the full amount of rent as agreed commencing October 2006 and that RNS vacated the Premises by January 2007. Defendants argue that the amounts claimed by plaintiff are troubling because they vary from party to party, have no sound documentary support from plaintiff and plaintiff does not explain the disparities either in the Complaint or in Vassello's affidavit. See Defs. Br. at 5-6, 16-17.[13] Further, defendants contend that even assuming that RNS did not pay rent starting October 2006 until plaintiff relet the Premises in February 2007, the total amount should be $23,063.76 ($5,765.94 X 4 months), not including the $6,000 offset for the security deposit held by plaintiff. See id. at 6. Defendants state that by plaintiff's own accounting the sums due and owing for that time period, including unspecified additional rent charges of nearly $10,000 total $33,049.21. See id. Defendants argue that the Complaint states $38,815 was due through February 28, 2007. See id. After subtracting the February rent of $5,765.94 (since the nail salon business was functioning at the Premises), the total amount is $33,049.21. See id.

Plaintiff counters by contending that defendants have elected not to conduct any discovery even though the Court gave the parties time to discover information relating to this case and yet

---

[13]Defendants point to the Motion for Default Judgment against defaulting defendants where plaintiff requested that the judgment against RNS be reduced in the amount of $176,648.03, plus interest accrued since October 17, 2006 (total $196,634.87) as compared to the request for judgment against Shaban in the amount of $153,813.98, plus interest since December 9, 2006 (total $167,430.85).

defendants are trying to create questions of fact through assumptions and speculations. See Vassello Aff., ¶23. Indeed, defendants assume that the nail salon business began paying rent in February 2007 and based on this incorrect assumption, argue that their total exposure is only $33,049.21. According to plaintiff, the new lease's start date was March 1, 2007. See id., ¶25. However, as an enticement to take possession of the Premises after RNS vacated it, the new tenant was given six months free rent. See id. Accordingly, the nail salon business did not start paying rent until September 1, 2007.[14] Plaintiff has attached as an exhibit a copy of its account ledger itemizing what the defendants owed through February 28, 2007. The ledger shows an account balance of $38,815.15 as of the last day before the lease with the new tenant commenced. See Vassello Aff. ¶26. Plaintiff has also attached as an exhibit a calculation of the remaining balance defendants owe less rents plaintiff hopes to collect from the new tenant and less the $6,000 security deposit. The total amount due is $176,684.03.

It is undisputed that by January 2007, the defaulting defendants had vacated the Premises.[15] While plaintiff relet the Premises to a nail salon business in February 1, 2007, plaintiff's

---

[14]Defendants also claim that there is a question of fact as to why the default judgment filed against Shaban was lower ($153,813.98) when compared to RNS ($176,684.03). Plaintiff contends that this all could have been explained had the defendants opted to conduct discovery. In any event, plaintiff states that before plaintiff filed the present action, it had received a judgment against Shaban for the unpaid rent Shaban owed through December 8, 2006 plus legal fees. Accordingly, Shaban's total exposure is still $176,684.03. However, since a judgment had already been taken against Shaban for rent through December 8, 2006, he was given a credit for the prior judgment.

[15]Defendants state that defaulting defendants vacated the Premises by December 26, 2006. However, plaintiff agrees for purposes of simplicity that a few days' difference is immaterial.

affidavit demonstrates that the new lease's start date was not until March 1, 2007. However, plaintiff claims that the new tenant was given six months free rent and as such plaintiff did not start collecting rent from the new tenant until September 2007. Defendants' claim that plaintiff has not provided this Court with a copy of the new lease or any details concerning the nature of the agreement with the new tenant, other than indicating that the new tenant pays less rent. Again, the Court notes that the April 2008 Order gave the parties an opportunity for discovery, yet defendants failed to conduct any discovery during this time. See Travelers Ins. Co. v. Lewis, 756 F.Supp. 172, 180 (S.D.N.Y.1991) (opposition to summary judgment motion denied where party failed to establish that it had been denied reasonable access to discovery or that potentially favorable information could have been discovered).

The Court is reluctant to give defendants a "second bite at the apple" given its initial non-compliance with the April 2008 Order. However, since there has been no showing of dilatory conduct by defendants,[16] the Court will allow defendants to be heard on the issue of damages. In this regard, I find that a hearing is necessary to determine the appropriate amount of damages in this case. Accordingly, Magistrate Judge Marian Payson shall conduct a hearing on the issue of damages, and issue a Report and Recommendation to the Court with her findings. Judge Payson shall

---

[16]See John Hancock Prop. and Cas. Ins. Co. v. Universale Reinsurance, 147 F.R.D. 40, 47 (S.D.N.Y.1993) ("[a]t least when the party opposing the motion has not been dilatory in seeking discovery, summary judgment should not be granted[.]")

issue a briefing schedule on the issue and shall schedule a date for the hearing of this matter.

## CONCLUSION

Plaintiff's motion for summary judgment is granted in part and denied in part and defendants' motion for partial summary judgment is granted in part and denied in part. With respect to the issue of damages, Magistrate Judge Marian Payson shall conduct a hearing and issue a Report and Recommendation to the Court with her findings. Plaintiff's request for leave to submit an application for legal fees is granted. However, plaintiff's application for attorney's fees shall be filed after the Court's decision on damages.

**ALL OF THE ABOVE IS SO ORDERED.**

<div style="margin-left: 50%;">

_s/Michael A. Telesca_

MICHAEL A. TELESCA
United States District Judge

</div>

Dated:    Rochester, New York
          March 13, 2009